Gensiro KAWAMOTO, Plaintiff,

v.

**CB RICHARD ELLIS, INC.,**
**a Delaware corporation,**
**Defendant.**

**Civ. No. 02–00283 SOM/KSC.**

United States District Court,
D. Hawai'i.

Sept. 19, 2002.

---

Shelby Anne Floyd (argued), Jerilynn Ono Hall (appeared, but did not argue), Alston Hunt Floyd & Ing, Honolulu, HI, for Plaintiffs.

Bruce L. Lamon (appeared, but did not argue), Goodsill Anderson Quinn & Stifel, Honolulu, HI, Gary M. Funamura (argued), Trainor Robertson, Sacramento, CA, for Defendants.

### ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER

MOLLWAY, District Judge.

### I. INTRODUCTION.

Plaintiff Gensiro Kawamoto ("Kawamoto") has sued CB Richard Ellis, Inc. ("CBRE"), alleging that CBRE breached contracts for the management of more than 600 of Kawamoto's residential properties located in California. CBRE has moved (1) to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2); (2) to transfer this action on grounds of im-

proper venue under Rule 12(b)(3); and (3) to transfer venue under 28 U.S.C. § 1404.

CBRE's motion to transfer venue is granted. This action is transferred to the Eastern District of California. In light of that transfer, this court declines to address the merits of CBRE's motion to dismiss the action for lack of personal jurisdiction. That motion is denied without prejudice.

## II. BACKGROUND FACTS.

Kawamoto is a citizen and resident of Japan. CBRE is a Delaware corporation that performs real estate management services for property owners.

In May and June of 2001, Kawamoto and CBRE entered into three management agreements (the "Management Agreements"), under which CBRE was to manage various residential properties owned by Kawamoto and located in California. Compl. ¶¶ 7–12. Each agreement covered 200 or more dwellings or apartments. Compl. ¶¶ 7, 9, 11.

Kawamoto alleges that CBRE failed to use due diligence in its management of the properties and that it failed to perform various parts of the management agreements. Kawamoto specifically alleges that CBRE failed to make repairs in a timely fashion. Kawamoto contends that CBRE's actions or omissions in managing the properties caused two lawsuits (the "Sonoma County litigation") and various other actions to be filed against Kawamoto by and on behalf of Kawamoto's tenants. Kawamoto also contends that he faces future litigation relating to conditions in and on the properties managed by CBRE during the relevant period. Compl. ¶ 66.

## III. ANALYSIS.

█ Because this court may transfer venue under either § 1404(a) or § 1406(a) without regard to whether it has personal jurisdiction over CBRE, this court need not decide the issue of personal jurisdiction before deciding to transfer venue. Under § 1404(a), a district court may transfer an action to any other district or division where it might have been brought "for the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). Under § 1406(a), a district court may, "in the interest of justice," transfer an action "laying venue in the wrong division or district" to any district or division in which it could have been brought. 28 U.S.C. § 1406(a).

The Supreme Court held in Goldlawr, Inc. v. Heiman, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962), that a district transferring an action under § 1406(a) need not have personal jurisdiction over the defendant. Following Goldlawr, many district courts, including the District of Hawaii, have concluded that a district court may also transfer an action under § 1404(a) regardless of whether it has personal jurisdiction over the defendant. See Nelson v. Int'l Paint Co., 716 F.2d 640, 643 n. 4 (9th Cir.1983) (noting that several lower courts have relied on Goldlawr to transfer a claim where the transferor forum does not have personal jurisdiction over a party); United States v. Berkowitz, 328 F.2d 358 (3d Cir. 1964) (stating that § 1404(a) and § 1406(a) are "companion sections" and that "[the Goldlawr § 1406(a) ] rationale applies equally to § 1404(a)"); Reed v. Brown, 623 F.Supp. 342, 346 (D.Nev.1985) (transferring action under § 1404(a) where court did not have personal jurisdiction); Froelich v. Petrelli, 472 F.Supp. 756, 758–60 (D.Haw.1979) (concluding that both § 1404(a) and § 1406(a) permit transfer of venue in the absence of personal jurisdiction).[1] Therefore, this court concludes

---

1. See also 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3827, 3844 (1986 & Supp. 2002) (noting that the Goldlawr principle applies by analogy to transfers under § 1404(a)).

that it can transfer this action without regard to whether this court has personal jurisdiction over CBRE.[2]

Because this court concludes that Hawaii is a proper venue for this action, it transfers venue under § 1404(a). It notes, however, that it can and would transfer venue under § 1406(a) if venue were not proper in Hawaii. Section 1404(a) generally applies when the transferor court is a proper venue for the action, while § 1406(a) is generally relied on when venue is not proper in the forum where a plaintiff originally filed suit. In either case, the relevant inquiry involves the "interest of justice." As discussed below, the § 1404(a) analysis also takes into account the convenience of the parties and witnesses.

### A. This Court Transfers Venue Under § 1404(a).

#### 1. Venue in Hawaii Is Proper.

██ Venue can be transferred under § 1404(a) only if venue is proper in the transferor court. Because jurisdiction is based solely on diversity of citizenship in this case, venue is proper in "(1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated ...." 28 U.S.C. § 1391(a).[3] As a corporation, CBRE is deemed to reside in

any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.[4] 28 U.S.C. § 1391(c).

Venue is proper here because a "substantial part of the events or omissions giving rise to the claim" occurred in Hawaii. 28 U.S.C. § 1391(a)(2). Kawamoto alleges that CBRE failed to perform various provisions of the Management Agreements, particularly those that required CBRE to report to Carol Asai–Sato, Kawamoto's agent in Hawaii, and to proceed as she directed. Under the terms of the Management Agreements, all communications from CBRE to Kawamoto, including copies of written notices to tenants regarding repairs, were sent to Asai–Sato. CBRE remitted rental payments from tenants to Kawamoto's bank account in Hawaii. Asai–Sato, who was the only person authorized to approve general repairs to the properties, received requests for repairs and communicated frequently with CBRE regarding management of the properties. At one point, CBRE employees traveled to Hawaii to meet with Asai–Sato to discuss the performance of the Management Agreements, including CBRE's alleged failure to resolve the matter of a furnace recall as directed. Though the bulk of CBRE's responsibilities under the Management Agreements involved the day-to-day management of the properties located in California, its communications with Asai–Sato constituted an integral part of its responsibilities and are a substantial

---

**2.** This is not to say that personal jurisdiction is irrelevant to other issues, as the question of personal jurisdiction may determine the choice of law to be applied by the forum state. *Nelson v. Int'l Paint Co.,* 716 F.2d 640 (9th Cir.1983).

**3.** Under 28 U.S.C. § 1391(a), venue is also proper in "(3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may other-

wise be brought." Because venue would be proper in both the Eastern District of California and the Northern District of California, § 1391(a)(3) does not apply in this case.

**4.** Consequently, personal jurisdiction over CBRE would make venue proper in Hawaii. Nevertheless, venue can be proper in Hawaii even if this court does not have personal jurisdiction over CBRE as long as § 1391(a)(2) applies. 28 U.S.C. § 1391(a), (c).

part of the actions that give rise to Kawamoto's claims.

### 2. A Transfer Would Serve the Convenience of Parties and Witnesses and the Interest of *Justice.*

■ Under § 1404(a), the district court may transfer venue based on the convenience of the parties and witnesses and the interest of justice. 28 U.S.C. § 1404(a). "The purpose of § 1404(a) is 'to prevent the waste of time, energy, and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Lung v. Yachts Int'l*, 980 F.Supp. 1362, 1369 (D.Haw.1997) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)).

With the passage of § 1404(a), courts gained broader discretion over transfers than courts had had under the earlier doctrine of *forum non conveniens.* Even under § 1404(a), however, courts consider the traditional *forum non conveniens* "private and public interest factors." *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir.1986) (citing *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)). Private factors include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises ...; and all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Id.* at 843. Public factors include considerations of court congestion, court familiarity with relevant state law, avoiding conflict of laws problems, the fairness of burdening citizens in the forum state with jury duty, and the "local interest in having localized controversies decided at home." *Id.*

Litigating in Hawaii would cause substantial inconvenience and expense for CBRE and its witnesses. With few exceptions, all of the proposed witnesses, including current and former CBRE employees and current and former Kawamoto tenants, reside in California. CBRE has offered the declarations of a number of witnesses, including the two persons who managed the bulk of Kawamoto's properties for CBRE, who state that they would not voluntarily travel to Hawaii to testify at trial.

In comparison to the potential inconvenience to CBRE and its witnesses, Kawamoto and his witnesses face substantially less inconvenience if the case is litigated in California. Kawamoto himself is a citizen and resident of Japan, and he has not articulated a reason why travel to California poses significantly more inconvenience or expense to him than travel to Hawaii. Kawamoto has indicated that he will call a few witnesses who reside in Hawaii, including Asai–Sato, but none of those witnesses has stated that he or she would not be willing to travel to California. Other witnesses for Kawamoto reside in California, including Kawamoto's counsel in the Sonoma County litigation and the property manager who replaced CBRE after the termination of the Management Agreements.

Furthermore, venue in California will present easier access to sources of proof other than witnesses. All of the residential properties are located in California. The majority of CBRE's alleged acts and omissions giving rise to Kawamoto's claims occurred in California. Therefore, more of the documents relating to this case are likely to be located in California rather than Hawaii. While Kawamoto's records of Asai–Sato's communications with CBRE are maintained in Hawaii, CBRE's records and documents relating to its communications with Asai–Sato and its management of the properties are located in California. Other significant documents related to the condition of the properties, including the

records maintained by the new property manager, as well as documents related to the Sonoma County litigation, are located in California.

Kawamoto's arguments relating to the convenience of the witnesses are unconvincing. Kawamoto argues that, as this court can "see from the Complaint," the scope of evidence will be narrow and will involve testimony from "relatively few people." Def.'s Opp. at 20. However, as Kawamoto's claims relate to CBRE's alleged mismanagement of hundreds of residential properties, it is not at all clear that few witnesses will be necessary. Kawamoto also argues that CBRE has not shown that any witness will be inconvenienced by trial in Hawaii, contending that witnesses residing outside Hawaii "can testify by depositions taken within 100 miles of their residence." *Id.* at 23. Depositions, however, are generally inferior to live witness testimony as a means of presenting evidence. While Kawamoto also suggests that potential witnesses residing in California would be willing to travel to Hawaii if CBRE paid for their travel expenses, the appropriate analysis under § 1404(a) takes into account the costs involved in obtaining the attendance of willing witnesses. Clearly, witnesses residing in California would find it far more convenient to testify in California, and some have asserted that they would be unwilling to testify in Hawaii for reasons other than cost. For willing witnesses, the cost of travel to Hawaii would be significant, no matter who paid that cost.

The private factors favor transfer of venue by a large margin, with the balance of the public factors, on the record before this court, favoring transfer by a small margin. The parties have offered various statistics relating to caseloads in Hawaii and California, none of which compels a finding that one court or another is more congested. Neither party has identified a specific choice of law or conflicts of law issue that weighs strongly in favor of a particular venue. The final two public factors listed above, local interest and burden on the jury, favor transferring venue to California. Because California was the primary location of the intended performance of the Management Agreements and because those agreements covered so many residential properties, California appears to have a greater local interest than Hawaii does in this controversy.

After weighing the relevant private and public factors, this court concludes that the interest of justice would be better served by transferring venue to California.

B. This Court Would Transfer Venue Under § 1406(a) If *Venue Were Not Proper in Hawaii.*

■ Section 1406(a) provides for transfer of venue when venue is improper in the transferring court and a transfer is in the interest of justice.[5] This court concludes that a transfer to California would serve the interest of justice under § 1406(a). Therefore, even if venue were not proper in Hawaii, this court would transfer this action to California.

Transfer is usually more in the interest of justice than dismissal is. *See* Wright, Miller & Cooper, *supra* note 1, at § 3827. Considerations similar to those in the foregoing § 1404(a) "interest of justice" analysis would apply here as well. As discussed above, transfer of this action to California would avoid substantial expense and incon-

---

5. Some courts have used § 1406(a) to transfer venue when personal jurisdiction is lacking even when venue is proper in the transferring court. Wright, Miller & Cooper, *supra* note 1, at § 3827. However, "the correct way to achieve this result is to apply the Goldlawr principle by analogy to transfers under § 1404(a), the statute that allows transfer from one proper venue to another." *Id.*

venience in connection with procuring witnesses and evidence. Transfer of venue would also avoid the unnecessary delay and expense of refiling this action. Kawamoto has not suggested any reason that transfer of venue would be unjust. Therefore, consistent with its analysis under § 1404(a), this court concludes that transfer of venue, even if venue were not proper in Hawaii, would be in the interest of justice under § 1406(a).

C. **The Eastern District of California Is Preferable** *to the Northern District of California.*

██ In its motion, CBRE urges this court to transfer venue to the Eastern District of California. Kawamoto, on the other hand, argues that transfer to the Northern District of California would be more appropriate than transfer to the Eastern District of California if this court decides to transfer venue.

At the outset, this court notes that San Francisco and Sacramento are less than 100 miles apart and are located in the same state. The Eastern and Northern Districts of California apply the same substantive law and have the same expertise with regard to the application of federal and state law. As discussed below, neither Kawamoto nor CBRE has alleged that the choice of one transferee forum over another would present significant financial or physical hardship or prejudice a party.

The first step in the determination of a transferee venue is to ensure that the potential transferee forum is a district "where [the action] might have been brought" under § 1404(a). Both the Northern District of California and the Eastern District of California meet this test. Under § 1404(a), the transferee venue must be a proper venue for the action and must have jurisdiction over the subject matter and the person. As this action is based on diversity of citizenship, both the Eastern District of California and the Northern District of California would have subject matter jurisdiction over this case.[6] CBRE concedes that it is subject to personal jurisdiction in both the Eastern District of California and the Northern District of California. Neither party asserts that venue is improper in either district.

This court next considers which proposed venue will be more convenient for the parties and witnesses and in the interest of justice. Based on the limited record before it, this court transfers venue to the Eastern District of California. Of the over 600 residential properties covered by the Management Agreements, approximately 450 are located in the Eastern District of California, and approximately 150 are located in the Northern District.[7] CBRE has alleged that all but two of its property managers are located in the Eastern District of California, as well as the majority of the vendors and repair people with whom CBRE contracted in managing Kawamoto's properties.

Kawamoto urges this court to select the Northern District of California for several reasons, none of which tips the balance of considerations in his favor. First, Kawamoto argues that it is "more convenient" for him to travel to San Francisco than to Sacramento. Because of the proximity of San Francisco and Sacramento, particularly in relation to their distance from Kawamoto's residence of Japan, this argument is not compelling. Second, Kawamoto argues that his California counsel is located in the Northern District of California. This is a factor generally given

---

**6.** This is true, of course, assuming that the other requirements for subject matter jurisdiction are met.

**7.** CBRE made this allegation during the hearing on this motion. Kawamoto did not dispute CBRE's tally.

little or no weight, especially when the distance between possible venues is small and when no financial hardship is alleged. *See* Wright, Miller & Cooper, *supra* note 1, at § 3850. Third, Kawamoto states that the majority of the furnaces subject to recall were located in the Northern District of California. It appears, however, that Kawamoto has sold all of the properties located in the Northern District, and he has alleged that because of the "extensive repairs" subsequently made to those properties, those properties will be of little evidentiary value during the trial. Defs.' Opp. at 24. CBRE does plan to call witnesses residing in the Northern District of California to testify regarding the Sonoma County litigation,[8] but it is not clear that those witnesses would find it materially more convenient to testify in the Northern District of California than in the Eastern District. Fourth, Kawamoto contends that the docket in the Northern District of California is presently less congested than that of the Eastern District of California. Caseloads in district courts are subject to frequent change, and the present difference does not outweigh the factors raised by CBRE in favor of the Eastern District.

Finally, Kawamoto argues that, because he is the plaintiff, this court should defer to his choice of forum. It is true that a plaintiff's initial choice of forum (in this case, Hawaii) usually receives some weight when courts decide whether to transfer venue. The plaintiff's "second choice" of forum is not automatically entitled to the same amount of deference. *E.g., Wright v. Interbank Capital, Inc.,* No. C99–0091 MMC(ARB), 1999 WL 354516 (N.D.Cal. May 19, 1999) (declining to defer to plaintiff's second choice of forum and granting defendant's motion to transfer venue to defendant's choice of forum under § 1404(a)).[9] Furthermore, even if the principle of deference to the plaintiff's choice of forum applies here, its applicability is limited. "A plaintiff's choice of forum is normally only given substantial deference if the plaintiff is a resident of the district in which the action is brought. Otherwise, this bears little significance ...." *Miracle Blade, LLC. v. Ebrands Commerce Group, LLC.,* 207 F.Supp.2d 1136, 1155 (D.Nev.2002) (citation omitted). Kawamoto, of course, resides neither in Hawaii nor in any district in California.[10]

8. Sonoma County is located in the Northern District of California.

9. *Cf. Medford Pac. v. Danmor Const., Inc.,* No. CIV. 97–697–FR, 1997 WL 419280 (D.Or. July 7, 1997) (denying plaintiff's motion to transfer venue under § 1404(a) to a different division within the District of Oregon after the case had been transferred from Hawaii). The court in *Medford Pacific* stated, "The court does not give much deference to the plaintiff's second choice of forum .... If the plaintiff had wanted to file this action in [the second choice], it could have done so." *Id.* at 2. *Accord FPC Corp. v. Uniplast, Inc.,* 994 F.Supp. 945, 946 (N.D.Ill.1998) ("Since the [plaintiff's proposed transferee forum] is not [the plaintiff's] initial choice of forum nor its home forum, I do not give its second choice much weight."). *See generally* Wright, Miller & Cooper, *supra* note 1, at § 3848 ("It seems

one thing to give weight to plaintiff's initial choice of forum, but it seems odd that a plaintiff who has chosen an improper forum should have great weight given to her second choice.").

10. Courts do not agree on the amount of weight that the plaintiff's choice of forum should receive. *See* Wright, Miller & Cooper, *supra* note 1, at § 3848 (2002) ("The courts have developed a bewildering array of formulations on how much weight is to be given to plaintiff's choice of forum."). It should also be noted that many courts give less weight to the plaintiff's choice of forum when the events giving rise to the litigation did not occur in that forum. Though CBRE had contracted with Kawamoto to manage properties located in both the Northern and Eastern Districts of California, the majority of the properties were located in the Eastern District of California.

## IV. CONCLUSION.

For the foregoing reasons, the court grants CBRE's motion to transfer venue and denies the motion to dismiss without prejudice and without addressing the merits of that motion. The Clerk of Court is directed to transfer this action to the Eastern District of California and to close this court's files in this matter.

IT IS SO ORDERED.

*Kawamoto v. CB Richard Ellis, Inc.,* Civ. No. 02–00283 SOM/KSC; Order Granting Defen-

dants' Motion to Transfer.