10 So.3d 536 (2008)
Ex parte INDIANA MILLS & MANUFACTURING, INC., and McNeilus Truck and Manufacturing, Inc.
(In re Marcy Johnson, as personal representative of the estate of James Johnson, deceased v. McNeilus Truck and Manufacturing, Inc., et al.).
1070229.
Supreme Court of Alabama.
December 5, 2008.
*538 Charles A. Stewart III and Angela R. Rogers of Bradley Arant Rose & White L.L.P., Montgomery, for petitioner Indiana Mills & Manufacturing, Inc.; and R. Bruce Barze, Jr., and Steven R. Parker of Balch & Bingham LLP, Birmingham, for petitioner McNeilus Truck and Manufacturing, Inc.
Ted L. Mann and Robert Potter of Mann, Cowan & Potter, P.C., Birmingham, for respondent.
Thomas M. O'Hara of McDowell Knight Roedder & Sledge, L.L.C., Mobile, amicus curiae Alabama Defense Lawyers Association, in support of the petitioners.
SMITH, Justice.
Indiana Mills & Manufacturing, Inc. ("IMMI"), and McNeilus Truck and Manufacturing, Inc. ("McNeilus") (collectively "the petitioners"), petition for a writ of mandamus directing the Macon Circuit Court to transfer this action to the Lee Circuit Court on the basis of forum non conveniens. We grant the petition and issue the writ.

Facts and Procedural History
James Johnson worked for Sunflower Waste, LLC ("Sunflower"), a waste-disposal company whose principal office is located in Tallapoosa County. On March 7, 2006, James was driving a garbage truck owned by his employer. While James was traveling on Marvyn Parkway in Lee County, the raised rear door of the truck struck an overhead railroad trestle. The truck crashed, and James was killed when he was ejected through the front windshield.
The Opelika police and fire departments responded to the scene of the accident. James's body was transported to the East Alabama Medical Center, and his death was investigated by the Lee County coroner. The garbage truck was towed to a Sunflower facility located in Lee County.
Subsequently, Marcy Johnson, James's widow, on behalf of James's estate, sued McNeilus, the manufacturer of the garbage truck, and IMMI, the manufacturer of the seat belts in the garbage truck, alleging, among other things, that the truck and its seat belts were defective. Additionally, Marcy sued three individuals who were employees of Sunflower at the time of the accident: Jack Conner, a maintenance manager; Russell Davis, an operations manager; and Van Forrester, a district manager, alleging that these individual defendants willfully breached a duty to provide James with a safe work *539 environment and that they willfully removed, failed to install, or failed to maintain certain safety devices on the garbage truck and, in doing so, contributed to James's death. See Ala.Code 1975, § 25-5-11.
The petitioners, joined by Conner, Davis, and Forrester, filed motions to transfer the case to the Lee Circuit Court based on the doctrine of forum non conveniens. The trial court denied the motion, and IMMI and McNeilus petition for mandamus relief.

Standard of Review
"`The proper method for obtaining review of a denial of a motion for a change of venue in a civil action is to petition for the writ of mandamus.' Ex parte National Sec. Ins. Co., 727 So.2d 788, 789 (Ala.1998). A writ of mandamus is appropriate when the petitioner can demonstrate `(1) a clear legal right to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court.' Ex parte BOC Group, Inc., 823 So.2d 1270, 1272 (Ala.2001). Additionally, this Court reviews mandamus petitions challenging a ruling on venue on the basis of forum non conveniens by asking whether the trial court exceeded its discretion. Ex parte Fuller, 955 So.2d 414 (Ala.2006); Ex parte Verbena United Methodist Church, 953 So.2d 395 (Ala.2006). Our review is limited to only those facts that were before the trial court. Ex parte Pike Fabrication, Inc., 859 So.2d 1089, 1091 (Ala. 2002)."
Ex parte Kane, 989 So.2d 509, 511 (Ala. 2008).

Discussion
Alabama Code 1975, § 6-3-21.1(a), provides when a civil action must be transferred under the doctrine of forum non conveniens:
"With respect to civil actions filed in an appropriate venue, any court of general jurisdiction shall, for the convenience of parties and witnesses, or in the interest of justice, transfer any civil action or any claim in any civil action to any court of general jurisdiction in which the action might have been properly filed and the case shall proceed as though originally filed therein...."
(Emphasis added.) A party moving for a transfer under § 6-3-21.1 has the initial burden of showing, among other things, one of two factors: (1) that the transfer is justified based on the convenience of either the parties or the witnesses, or (2) that the transfer is justified "in the interest of justice." Ex parte Masonite Corp., 789 So.2d 830, 831 (Ala.2001); Ex parte National Sec. Ins. Co., 727 So.2d 788, 789 (Ala.1998). A party may show that either or both of these factors require a transfer.
There is no dispute that venue in this case is proper in both Macon County and Lee County. However, the petitioners argued in their motion for a change of venue and in their mandamus petition both that the convenience of the parties and witnesses required that the case be transferred to Lee County and that it was in the interest of justice to do so. We need not analyze the convenience of the parties and witnesses in this case, because we hold that the interest of justice requires a transfer.[1]
*540 The "interest of justice" prong of § 6-3-21.1 requires "the transfer of the action from a county with little, if any, connection to the action, to the county with a strong connection to the action." Ex parte National Sec. Ins. Co., 727 So.2d at 790. Therefore, "in analyzing the interest-of-justice prong of § 6-3-21.1, this Court focuses on whether the `nexus' or `connection' between the plaintiff's action and the original forum is strong enough to warrant burdening the plaintiff's forum with the action." Ex parte First Tennessee Bank Nat'l Ass'n, 994 So.2d 906, 911 (Ala.2008). Additionally, this Court has held that "litigation should be handled in the forum where the injury occurred." Ex parte Fuller, 955 So.2d 414, 416 (Ala.2006). Further, in examining whether it is in the interest of justice to transfer a case, we consider "the burden of piling court services and resources upon the people of a county that is not affected by the case and... the interest of the people of a county to have a case that arises in their county tried close to public view in their county." Ex parte Smiths Water & Sewer Auth., 982 So.2d 484, 490 (Ala.2007). The petitioners in this case are thus required to demonstrate "`that having the case heard in [Lee] County would more serve the interest of justice'" than having the case heard in Macon County. Ex parte First Tennessee Bank, 994 So.2d at 909 (quoting Ex parte Fuller, 955 So.2d 414, 416 (Ala. 2006)).
Marcy argues that the interest of justice does not require a transfer in this case to Lee County because none of the parties reside or are located in Lee County. Additionally, she notes that neither IMMI or McNeilus "have business relationships" in Lee County, whereas Sunflower conducts business in Macon County and Conner resides there. Finally, litigating the case in Lee County, Marcy contends, would be less convenient for the parties.[2]
We agree that this case certainly has a connection with Macon County  as Marcy notes, Conner resides there and Sunflower conducts business there. Additionally, it is *541 true that none of the parties in this case actually resides in Lee County. However, we nevertheless hold that the overall connection between Macon County and this case is weak and that the connection between the case and Lee County is strong.
First and foremost, the accident occurred in Lee County. Lee County police and emergency personnel  the Opelika Police Department and the Opelika Fire Department  responded to the scene and investigated the accident. Additionally, Gene Manning, the chief deputy coroner of Lee County, investigated James's death. He testified in an affidavit that all the work he performed in connection with the investigation took place in Lee County. Additionally Danny Cotney, the assistant fire chief of the Opelika Fire Department, testified that the various records and documents generated by the department are located in Lee County.[3]
On the other hand, the "connection" or "nexus" with Macon County in this case is weak. No party but Conner resides or is located there.[4] Additionally, none of the relevant facts in this case actually involve Macon County.
In her dissent, Chief Justice Cobb suggests that this Court should defer to the trial court's decision. In Ex parte First Family Financial Services, Inc., 718 So.2d 658 (Ala.1998), the plaintiff maintained that a transfer was not required "upon the proposition that `[t]ransfers under § 6-3-21.1 are within the discretion of the trial judge ... [and that a] trial court [should] give deference to the plaintiff's choice of venue." Under the venue system established by the Alabama Legislature, "the plaintiff has the initial choice of venue." 718 So.2d at 659. This "choice" exists because, in many situations, Ala.Code 1975, § 6-3-7, would allow proper venue to exist in more than one county. "Reading [§ 6-3-7] in isolation, one would not discern that the Legislature intended to limit the plaintiff's choice of forum. However, § 6-3-7 must be read in pari materia with other Code sections dealing with the same subject, i.e., venue.... Accordingly, we must read § 6-3-7 in pari materia with § 6-3-21.1." 718 So.2d at 659-60.
We held in First Family that the adoption of § 6-3-21.1 "substantially modified the law relating to the venue of civil actions." 718 So.2d at 660. Formerly, "`[t]he ability to transfer cases within Alabama for the convenience of parties and witnesses and in the interest of justice was denied Alabama courts ....'" 718 So.2d at 660 (quoting Robert D. Hunter, Alabama's 1987 Tort Reform Legislation, 18 Cumb. L.Rev. 281, 289-90 (1988)). We concluded, however, "that the Legislature, in adopting § 6-3-21.1, intended to vest in the trial courts, the Court of Civil Appeals, and this Court the power and the duty to transfer a cause when `the interest of justice' requires a transfer." 718 So.2d at 660 (emphasis added).
The plaintiff in First Family argued "that a trial judge has almost unlimited *542 discretion in such matters." We noted that although the trial court "has a degree of discretion in determining whether the factors listed in the statute ... are in favor of transferring the action," this degree of discretion is not unlimited and "must be considered in light of the fact that the Legislature used the word `shall' instead of the word `may' in § 6-3-21.1." 718 So.2d at 660 (emphasis added). This statute, we have subsequently noted, is "compulsory," Ex parte Sawyer, 892 So.2d 898, 905 n. 9 (Ala.2004), and the use of the word "shall" is "imperative and mandatory." Ex parte Prudential Ins. Co. of America, 721 So.2d 1135, 1138 (Ala.1998) (comparing the use of the word "shall" in Alabama's interstate forum non conveniens statute, Ala.Code 1975, § 6-5-430, with its use in § 6-3-21.1).
The accident made the basis of this case occurred in Lee County, and the accident was investigated by Lee County authorities. We see no need for Macon County, with its weak connection with this case, to be burdened with an action that arose in Lee County simply because one of several defendants resides there. Instead, Lee County clearly has a strong connection with this case. See Ex parte Verbena United Methodist Church, 953 So.2d 395, 400 (Ala.2006) (holding that the "weak nexus" with the county in which an action was filed did not "justify burdening" that county with the trial of that action; thus, the doctrine of forum non conveniens required the case be transferred to a county that had "a much stronger nexus"). We thus conclude that having the case heard in Lee County would "more serve the interest of justice." Ex parte First Tennessee Bank, 994 So.2d at 909. The trial court therefore exceeded its discretion in refusing to transfer the case to Lee County.[5]
Chief Justice Cobb in her dissent urges this Court to adopt a rule requiring parties to demonstrate a significant likelihood of injustice in order to warrant a change of venue based on the interest-of-justice factor of § 6-3-21.1. Although acknowledging that Alabama law does not require such a showing, Chief Justice Cobb cites several cases in support of the idea that a party should show a "significant likelihood of injustice in the absence of the transfer of the case." However, the decisions cited in her dissent do not appear to support this assertion.[6] Additionally, it *543 is unclear how the new analysis proposed by Chief Justice Cobb would require any less consideration of "subjective" elements, to which Chief Justice Cobb objects. Moreover, this proposed limitation to the interest-of-justice factor has no support in the text of § 6-3-21.1; no persuasive authority urges its adoption; and neither party in this case has discussed this proposed limitation. We thus see no need to engraft such an analysis to restrict the application of § 6-3-21.1.

Conclusion
The trial court is directed to transfer the case to the Lee Circuit Court.
PETITION GRANTED; WRIT ISSUED.
SEE, LYONS, WOODALL, STUART, BOLIN, and PARKER, JJ., concur.
MURDOCK, J., concurs in the result.
COBB, C.J., dissents.
COBB, Chief Justice (dissenting).
I respectfully dissent. I write first to note my continued concern with this Court's inclination to intrude into areas properly reserved to the trial court's discretion, with the added detriment of unduly expanding this Court's "piecemeal" appellate jurisdiction. Previously, this Court sought to avoid reviewing cases in such a fashion and quoted with approval the federal plan of constraining the use of extraordinary writs:
"`In strictly circumscribing piecemeal appeal, Congress must have realized that in the course of judicial decision some interlocutory orders might be erroneous. The supplementary review power conferred on the courts by Congress in the All Writs Act is meant to be used only in the exceptional case where there is clear abuse of discretion or "usurpation of judicial power."'"
Ex parte Alabama Power Co., 280 Ala. 586, 589, 196 So.2d 702, 705 (1967) (quoting Bankers Life & Cas. Co. v. Holland, 346 U.S. 379, 383-84, 74 S.Ct. 145, 98 L.Ed. 106 (1953) (emphasis added)). See also Ex parte Textile Workers Union of America, 249 Ala. 136, 30 So.2d 247 (1947).
With respect to the circumstances presented by this case, it is apparent that the main opinion avoids any conclusion that under the doctrine of forum non conveniens, *544 Ala.Code 1975, § 6-3-21.1, the trial court exceeded its discretion in refusing to transfer the case because the facts show that there is little difference between the forums in convenience to the parties. That is, the facts do not support the issuance of the instant writ under the doctrine of forum non conveniens. The doctrine of forum non conveniens requires the proponents of a change in venue to show that the proposed location  here Lee County  would be "significantly more convenient" than the current location  here Macon County  a showing that the instant facts do not support. Moreover, in this situation, the trial court would be well within its discretion in deferring to the plaintiff's choice of the forum in which to try the cause. See, e.g., Ex parte Bloodsaw, 648 So.2d 553 (Ala.1994); Ex parte Johnson, 638 So.2d 772 (Ala.1994); and Ex parte Townsend, 589 So.2d 711 (Ala.1991).
Thus, the main opinion shifts its emphasis to whether the change in venue is warranted in the "interest of justice." Under Ex parte First Tennessee Bank National Ass'n, 994 So.2d 906, 909 (Ala.2008), and Ex parte Fuller, 955 So.2d 414, 416 (Ala.2006), the Court would then simply weigh factors concerning "justice," such as the connection between the case and the county in which venue is sought, to decide, entirely subjectively, whether justice is better served by trying the case in one county than in another. Unlike the standard articulated in the main opinion, in which the Court lists such factors as the facts that none of the parties reside in Lee County and that some of the parties do conduct business in Macon County before concluding that, nevertheless, the case must be transferred to Lee County because the "connection" with that county is stronger than the "connection" with Macon County, primarily because the accident and the subsequent investigation of the accident occurred in Lee County.
In my view, this sort of analysis flies in the face of the deference this Court once paid to a plaintiff's right to choose among appropriate forums for the prosecution of his or her cause,[7] and it further permits this Court to substitute its discretion for that of the trial court. Moreover, the simple weighing of factors to determine the strength of a particular forum's connection or the extent that a transfer would serve justice invites parties to petition this Court for a writ of mandamus to change between two equally "convenient" venues in most situations where there are two or more acceptable venues. I believe that a proper evaluation of the interest-of-justice factor in § 6-3-21.1 would require the movant to show a significant likelihood of injustice if the transfer does not occur before this Court invalidates the plaintiff's choice of forum and displaces the trial court's discretion with its own. Accordingly, in order to warrant a change of venue based on the interest of justice, the movant should be required to present facts showing a significant likelihood of injustice in the absence of the transfer of the case. Although this requirement has not been adopted in this State, it underlies the rationale of the transfer of, or the refusal to transfer, a case in numerous decisions in other jurisdictions. See, e.g., King v. Russell, 963 F.2d 1301, 1304 (9th Cir.1992) (approving the federal district court's dismissal of a cause based on improper venue in part because the plaintiff had been unsuccessful in filing the same claims in another venue  "it would not be in the interests of justice to transfer this *545 case because, among other reasons, King herself expressed no interest in transfer and because `of the fact that the action smacks of harassment and bad faith on the plaintiff's part in that it appears that she filed it here after repeatedly losing on at least some similar claims in California.'"); Wood v. Santa Barbara Chamber of Commerce, 705 F.2d 1515, 1523 (9th Cir.1983) (approving the federal district court's refusal to transfer a cause to a venue where personal jurisdiction did exist because "[j]ustice would not have been served by transferring Wood's claims back to a jurisdiction that he purposefully sought to avoid through blatant forum shopping"); Kawamoto v. CB Richard Ellis, Inc., 225 F.Supp.2d 1209, 1212 (D.Haw.2002) (holding generally that a showing of the relative injustice to the parties was a factor to be considered in transferring a case under federal law); Garza v. Garcia, 137 S.W.3d 36 (Tex.2004) (applying the Texas statutory requirement that "the transfer of the action would not work an injustice to any other party"); and In re Trust Created Under Agreement Dated September 19, 1983, 469 N.E.2d 768 (Ind.Ct.App.1984) (noting that a change of venue in the interest of justice must be based upon a showing that the litigation of the cause in the state is so inconvenient that substantial injustice is likely to result). See, generally, C.P. Jhong Annotation, Construction and Application of Federal Statute (28 U.S.C.A. § 1406) Providing for Dismissal or Transfer of Cases for Improper Venue, §§ 22-31, 3 A.L.R. Fed. 467 (1970, Supp. 2008-2009).
I recognize that none of these cases is precisely on point with the venue scheme set out in § 6-3-21.1. They do, however, give examples of what factors might be considered as a basis for venue decided on the "interest of justice." The point is that the distinction between a change of venue for the convenience of the parties and a change of venue in the interest of justice should be more significant than simply assessing the relative travel times. A change of venue based on the "interest of justice" should meet a higher standard, one that can be plainly and specifically articulated. It is this Court's responsibility to enunciate such a standard, based on the statute, which can then be understood and applied by the trial courts and all practitioners. I believe that the connection test as employed by the majority here falls short of the appropriate analysis for changing venue "in the interest of justice." Although "connectedness" might be one consideration, the Court should also consider factors such as the ability of the parties to obtain a fair and timely trial in the respective venues, the selection of venue for purposes of harassment or fraud on the court, and the judicial resources that are available in a particular venue to adjudicate the cause. That is, the party seeking a change of venue "in the interest of justice" should be prepared to show that the denial of the motion for a change of venue will result in a significant likelihood of injustice.
It is a long-settled maxim of American jurisprudence that "justice delayed is justice denied." Folsom v. Wynn, 631 So.2d 890, 898 (Ala.1993) ("This Court recognizes that implicit in the Judiciary's constitutional requirement to render services is the requirement that those services be delivered in a timely manner."). See also Chism v. Jefferson County, 954 So.2d 1058 (Ala.2006), and Willis v. State ex rel. Flynt Oil Co., 290 Ala. 227, 275 So.2d 657 (1973). The ever increasing tendency of parties to seek mandamus relief, thus adding many more months to the adjudicative process, must be reexamined. In this case, the counties in which this case would properly be adjudicated are equally convenient to the parties. Although the courts' relative *546 caseloads were not a factor argued in the context of this case, this Court's decision moves a case from a county with an average caseload to a county with one of the highest caseloads in the State, a decision that will almost certainly add increased delay to the resolution of this case. In the future, this factor should also be considered when this Court acts in "the interest of justice" to examine a transfer or a refusal to transfer under § 6-3-21.1.
NOTES
[1] Again, a transfer under 6-3-21.1 is appropriate based on either the convenience of the parties and witnesses or in the interest of justice. Chief Justice Cobb, in her dissent, faults this Court for not analyzing the convenience-of-the-parties-and-witnesses factor, which she argues would not require a transfer in this case. If this were true, however, then a discussion of that issue  given this Court's resolution of the case  would be dicta. Additionally, Chief Justice Cobb's analysis seems to elevate the convenience-of-the-parties-and-witnesses factor of § 6-3-21.1 over the interest-of-justice factor, which she criticizes as requiring the consideration of "subjective" elements. However, by including the "interest of justice" in § 6-3-21.1, the legislature has deemed this factor as one of two that may be considered when determining if a transfer under that statute is required. Nothing in the plain language of the statute implies that one factor is less worthy of consideration or that it should be ignored altogether.
[2] Chief Justice Cobb also asserts that this Court's decision to order the case transferred to Lee County moves this case from a county with an average caseload to a county with a higher caseload. However, no argument or evidence on this issue was presented to this Court by the parties; therefore, we may not consider it. In any event, an argument that a case should not be transferred to a circuit court with a higher caseload than the circuit court from which the case is being transferred is negated by the fact that the court services and resources of a county should not be burdened with a case that is only remotely connected with that county. Ex parte Smiths Water & Sewer Auth., supra. Additionally, citizens should not be required to suspend their lives and jobs to serve on a jury in a case with only a tenuous connection to their county merely because their local court has a lighter caseload. See Ex parte First Family Fin. Servs., Inc., 718 So.2d 658, 661 (Ala. 1998) ("`"Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation."'" (quoting Ex parte Gauntt, 677 So.2d 204, 221 (Ala.1996) (Maddox, J., dissenting), quoting in turn Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09, 67 S.Ct. 839, 91 L.Ed. 1055 (1947))).
[3] The petitioners also contend that numerous witnesses in this case reside in Lee County. Although the petitioners present affidavits from some of these witnesses, they fail to present affidavits for many others. See Ex parte ADT Sec. Servs., Inc., 933 So.2d 343, 345 (Ala.2006) (noting that, in considering a mandamus petition, this Court looks only to those facts presented to the trial court, and those facts "must be based upon `evidentiary material,' which does not include statements of counsel in motions, briefs, and arguments").
[4] The Johnsons lived in Montgomery County at the time of the accident; Marcy has since moved to Florida. IMMI is an Indiana corporation, and McNeilus is located in Minnesota. Sunflower is located in Tallapoosa County. Davis and Forrester live in Elmore County.
[5] Chief Justice Cobb, citing caselaw prior to the enactment of § 6-3-21.1, suggests that our review of this ruling risks "expanding this Court's `piecemeal' appellate jurisdiction." However, this Court has consistently reviewed rulings on motions to transfer filed pursuant to § 6-3-21.1 since that Code section was enacted in 1987. Additionally, this Court has reviewed rulings on motions to transfer under the common-law doctrine of forum non conveniens since at least 1957. See Ex parte Southern Bell Tel. & Tel. Co., 267 Ala. 139, 99 So.2d 118 (1957). Given the clear mandate of § 6-3-21.1 and this Court's historic practice, we decline to abandon our review of rulings on § 6-3-21.1 motions.

Additionally, review by petitions for the writ of mandamus does not offend the maxim that "justice delayed is justice denied." Alabama law specifically provides that a party may move for a transfer under § 6-3-21.1, and § 6-3-21.1 was specifically designed to end prior abuse of the legal process. Justice is not denied when a party successfully exercises the rights provided it by law  in this case, seeking the correct disposition of a transfer under § 6-3-21.1.
[6] King v. Russell, 963 F.2d 1301 (9th Cir. 1992), involves claims that were filed in an improper venue; the court cited Wood v. Santa Barbara Chamber of Commerce, 705 F.2d 1515, 1523 (9th Cir. 1983), in which the appellant claimed that the trial court should have transferred the case to a proper forum instead of dismissing it outright. The court noted in Wood that, under 28 U.S.C. § 1406(a), the trial court had the option of dismissing the case or transferring it "in the interest of justice." In determining whether a transfer, instead of a dismissal, was "in the interest of justice," the court held that "justice would not have been served" by transferring a case "to a jurisdiction that [the plaintiff] purposefully sought to avoid through blatant forum shopping." Neither King nor Wood discussed whether a party, to show that a transfer is in the interest of justice, must show a "significant likelihood of injustice" in the absence of the transfer.

Kawamoto v. CB Richard Ellis, Inc., 225 F.Supp.2d 1209, 1212 (D.Haw.2002), addressed a federal forum non conveniens statute and held that the convenience of the parties and witnesses required a transfer because most of the parties and witnesses lived in California and hearing the case in Hawaii was thus inconvenient. The court did not look to whether there would be a significant likelihood of injustice if the case were not transferred.
Garza v. Garcia, 137 S.W.3d 36 (Tex.2004), involves a Texas statute that specifically requires a determination of whether a transfer or the refusal to transfer would "work an injustice" on either the movant or any other party. See Tex. Civil Practice & Remedies Code § 15.002(b). Our legislature, in enacting § 6-3-21.1, chose not to include a similar explicit rule.
Finally, In re Trust Created Under Agreement Dated September 19, 1983, 469 N.E.2d 768, 772 (Ind.Ct.App.1984), involves the interpretation of Indiana's interstate forum non conveniens statute by the courts of that state, which require a showing that a "substantial injustice is likely to result" if a case is tried in that state. However, this decision contains no analysis as to why Indiana's caselaw requires such a consideration.
[7] See Bloodsaw, Johnson, and Townsend, supra. See also Ex parte Nichols, 757 So.2d 374 (Ala. 1999).