BRYAN, Justice.
Engineering Design Group, LLC, and David Stovall, the principal of Engineering Design Group, LLC (hereinafter collectively referred to as “EDG”), and Building & Earth Sciences, Inc. (“BES”), filed separate petitions with this Court, each seeking a writ of mandamus directing the St. Clair Circuit Court (“the trial court”) to enter an order transferring the action filed in the trial court by Delaney Exchange, LLC, and Springdale Stores Exchange, LLC (hereinafter collectively referred to as “the plaintiffs”), to the Shelby Circuit Court. For the reasons set forth below, we grant the petitions and issue a writ of mandamus directing the trial court to transfer the plaintiffs’ action to the Shelby Circuit Court.

*636
Facts and Procedural History

The plaintiffs, limited liability companies with their principal places of business in Mobile County, own real property in Shelby County. In anticipation of constructing a lake on that property, the plaintiffs entered into separate contracts with EDG; BES; Kent Brascho Excavating, Inc. (“KBE”); and Kent Brascho, the principal of KBE.
Engineering Design Group, a limited liability company with its principal place of business in Shelby County, contracted with the plaintiffs to provide engineering-design services for the dam necessary to construct the lake. BES, a corporation with its principal place of business in Jefferson County, contracted with the plaintiffs to provide geotechnical-engineering services relevant to construction of the dam, namely monitoring the placement of fill material and testing and verifying compaction of the fill material. KBE, a corporation with its principal place of business in St. Clair County, contracted with the plaintiffs to serve as the general contractor for construction of the dam.
On September 6, 2013, the dam constructed by KBE failed, causing the 37-acre lake to drain and temporarily flood the surrounding areas.[1] On March 17, 2015, the plaintiffs commenced an action in the trial court in which they asserted claims of negligence, breach of contract, gross negligence, wantonness, unjust enrichment, and breach of express warranty against EDG, BES, KBE, and Brascho. The plaintiffs’ complaint alleged: (1) that EDG had failed to design the dam’s outflow structure in accordance with the applicable standard of care and that EDG’s alleged breach of the standard of care was a direct cause of the failure of the dam; (2) that the alleged defects in EDG’s design of the outflow structure of the dam were “so obvious and apparent to a reasonably prudent contractor[ ] that no reasonably prudent contractor would follow them”; (3) that KBE generally failed to construct the dam “in a good and workmanlike manner”; (4) that Brascho failed to properly supervise and direct KBE’s employees in constructing the dam; and (5) that BES failed to monitor properly the placement of fill material and/or to test properly the All material for confirmation that it met the applicable compaction requirements.
The plaintiffs claimed that, as a result of the defendants’ alleged breaches, they had incurred costs and expenses “associated with clean-up, redesign and reconstruction of the lake and dam, loss of use and enjoyment of [their] property, loss of aquatic life, and damage and diminished value of [their] property.” The plaintiffs further alleged that they had been exposed to liability for injuries to third-party property owners whose property had been affected by the flood and that they had been exposed to liability to Shelby County agencies and departments that had responded to the accident.
On April 21, 2015, KBE and Brascho filed a joint answer to the plaintiffs’ complaint. That answer indicated that Bras-cho had individually initiated Chapter 7 bankruptcy proceedings in 2013, that he had received a discharge in bankruptcy, and that KBE had been dissolved on or around April 16,2014.
On April 23, 2015, BES filed a motion to transfer the plaintiffs’ action to the Shelby Circuit Court. In that motion, BES argued that venue was not proper in St. Clair County but that, even if it was, the case should be transferred to Shelby *637 County pursuant to § 6-8-21.1, Ala.Code 1975, commonly known as Alabama’s forum non conveniens statute. BES supplemented its motion with affidavits on June 1, 2015, and again supplemented the motion with legal authority on June 17, 2015.
On April 29, 2015, EDG filed an answer to the plaintiffs’ complaint in which it also alleged that venue in St. Clair County was improper and that the trial court should enter an order transferring the case to Shelby County pursuant to § 6-8-21.1. EDG subsequently filed a motion for a change of venue in which it detailed its grounds for requesting the change of venue. EDG supplemented its motion with an affidavit on June 2, 2015.
On June 22, 2015, the plaintiffs filed a response in opposition to EDG’s and BES’s motions for a change of venue. In that response, the plaintiffs argued that venue was proper in St. Clair County and that § 6-3-21.1 did not require the transfer of the case to Shelby County.
On June 23, 2015, the trial court heard oral arguments on EDG’s and BES’s motions. On July 2, 2015, the trial court entered an order denying EDG’s motion for a change of venue. Because that order did not mention BES’s motion for a change of venue, BES filed a motion requesting clarification of the July 2, 2015, order. Subsequently, on July 19, 2015, the trial court entered an order denying BES’s motion for a change of venue. EDG and BES filed with this Court separate petitions on August 13, 2015, and August 20, 2015, respectively, seeking a writ of mandamus directing the trial court to enter an order transferring the case to the Shelby Circuit Court. On December 28, 2015, this Court entered an order consolidating those petitions.

Standard of Review

““‘The proper method for obtaining review of a denial of a motion for a change of venue in a civil action is to petition for the writ of mandamus.” Ex parte Alabama Great Southern R.R., 788 So.2d 886, 888 (Ala.2000). “Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to' the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.” Ex parte Integon Corp., 672 So.2d 497, 499 (Ala.1995). Moreover, our review is limited to those facts that were before the trial court. Ex parte National Sec. Ins. Co., 727 So.2d 788, 789 (Ala.1998).
“ ‘ “The burden of proving improper venue is on the party raising the issue and on review of an order transferring or refusing to transfer, a writ of mandamus will not be granted unless there is a clear showing of error on the part of the trial judge.” Ex parte Finance America Corp., 507 So.2d 458, 460 (Ala.1987). In addition, this Court is bound by the record, and it cannot consider a statement or evidence in a party’s brief that was not before the trial court. Ex parte American Res. Ins. Co., 663 So.2d 932, 936 (Ala.1995).’
“Ex parte Pike Fabrication, Inc., 859 So.2d 1089, 1091 (Ala.2002).”
Ex parte Morton, 167 So.3d 295, 297 (Ala.2014).

Discussion

In their petitions to this Court, EDG and BES do not dispute that venue is *638 proper in St. Clair County.[2] Venue is proper in St. Clair County because Bras-cho is a resident of St. Clair County, see § 6-3-2(a), Ala.Code 1975, and KBE’s principal place of business was in St. Clair County, see § 6-3-7(a)(2), Ala.Code 1975. It is equally clear, given that EDG’s principal place of business is in Shelby County, that venue is also proper in Shelby County. § 6-3-7(a)(2).
“When venue is appropriate in more than one county, the plaintiffs choice of venue is generally given great deference.” Ex parte Perfection Siding, Inc., 882 So.2d 307, 312 (Ala.2003).
“Nevertheless, Alabama’s forum non conveniens statute permits the transfer of a civil action from one appropriate venue to another appropriate venue ‘for the convenience of parties and witnesses, or in the interest of justice.’ § 6-3-21.1. The forum non conveniens statute provides, in pertinent part:
“‘(a) With respect to civil actions filed in an appropriate venue, any court of general jurisdiction shall, for the convenience of parties and witnesses, or in the interest of justice, transfer any civil action or any claim in any civil action to any court of general jurisdiction in which the action might have been properly filed and the case shall proceed as though originally filed therein.’
“§ 6-3-21.1(a), Ala.Code 1975.”
Ex parte J & W Enters., LLC, 150 So.3d 190, 193 (Ala.2014). EDG and BES argue that the interest-of-justice prong of § 6-3-21.1 requires a transfer of the case from St. Clair County to Shelby County.[3]
“Thus, we must now determine whether ‘the interest of justice’ overrides the deference due the plaintiffs choice of forum. Our inquiry depends on the facts of the case. Ex parte ADT Sec. Servs., Inc., 933 So.2d 343 (Ala.2006).
“With regard to the ‘interest of justice’ prong of the forum non conveniens statute, this Court has stated:
“ ‘The “interest of justice” prong of § 6-3-21.1 requires “the transfer of the action from a county with little, if any, connection to the action, to the county with a strong connection to the action.” Ex parte National Sec. Ins. Co., 727 So.2d [788,] 790 [ (Ala.1998) ]. Therefore, “in analyzing the interest-of-justice prong • of § 6-3-21.1, this Court focuses on whether the ‘nexus’ or ‘connection’ between the plaintiffs action and the original forum is strong enough to warrant burdening the plaintiffs forum with the action.” Ex parte First Tennessee Bank Nat’l Ass’n, 994 So.2d 906, 911 (Ala.2008). Additionally, this Court has held that “litigation should be handled in the forum where the injury occurred.” Ex parte Fuller, 955 So.2d 414, 416 *639 (Ala.2006). Further, in examining whether it is in .the interest of justice to transfer a case, we consider “the burden of piling court services and resources upon the people of a county that is not affected by the case and ... the interest of the people of a county to have a case that arises in their county tried close to public view in their county.” Ex parte Smiths Water & Sewer Auth., 982 So.2d 484, 490 (Ala.2007).’
“Ex parte Indiana Mills & Mfg., Inc., 10 So.3d 536, 540 (Ala.2008)
Ex parte J & W, 150 So.3d at 194.
EDG and BES argue that the facts and evidence before the trial court indicate that Shelby County has a strong connection to the plaintiffs’ action. We agree. Stovall’s affidavit states that Engineering Design Group’s principal place of business is in Shelby County; that EDG performed survey work at the dam site in Shelby County; and that EDG created the designs for the dam in its office in Shelby County. Because the complaint alleges that EDG’s designs for the dam were defective, those designs will likely be significant at trial. It stands to reason that copies of those designs can be found at EDG’s Shelby County office. See Ex parte J & W, 150 So.3d at 197 (noting that, without requiring an evidentiary submission, “it stands to reason that documents relevant to [the plaintiffs] claims ... [are] located at [the defendant’s] place of business”).
KBE constructed the dam on the plaintiffs’ real property in Shelby County; thus, the plaintiffs’ allegations that KBE failed to construct the dam in a “good and workmanlike manner” have a direct connection to Shelby County. The plaintiffs’ allegations, regarding the sufficiency of Bras-cho’s supervision and direction of KBE’s employees’ construction of the dam are allegations concerning work Brascho did, or should have done, during the construction of the dam in Shelby County. Likewise, the plaintiffs’ allegations that BES failed to monitor properly the placement of fill material and/or to test properly the compaction of the fill material concern work that BES did, or should have done, at the dam site in Shelby County.
Furthermore, regarding the plaintiffs’ damages, any expenses the plaintiffs incurred for clean-up from the flooding would have been incurred for work done on real property in Shelby County. Likewise, the plaintiffs’ claims for costs associated with reconstruction of the dam, the loss of use and enjoyment of their property, the diminished value of their property, and the loss of aquatic life are all claims that concern the plaintiffs’ real property in Shelby County. The plaintiffs also claim that they incurred liability to third-party property owners allegedly affected by the flooding and to governmental agencies and departments that responded to the accident. Those property owners and governmental agencies and departments to whom the plaintiffs claim they incurred liability are all located in Shelby County.
In response, the plaintiffs argue that Shelby County does not have a strong connection to the ‘case because, they say, no injury occurred in Shelby County. In support of that argument, the plaintiffs classify their injuries as solely financial and argue that, consequently, their injuries were felt not in Shelby County but, rather, at their principal places of business in Mobile County, although that is not where they filed their complaint. That distinction, however, is largely irrelevant. In providing proper forums for civil actions, Alabama’s venue statutes applicable to this case, § 6-3-2 and § 6-3-7, emphasize that venue is proper in, among other places, the county where the acts or omissions giving *640 rise to a plaintiffs claims occurred. See § 6-3-2(a)(3) and § 6-3-7(a)(l). “This Court has construed ‘the events or omissions giving rise to the claim’ to refer to the wrongful acts or omissions of the ... defendant.” Ex parte Thomasville Feed & Seed, Inc., 74 So.3d 940, 943 (Ala.2011).
On the other hand, the location where a plaintiff feels the financial impact of a defendant’s wrongful conduct does not, in and of itself, provide a proper forum. See § 6-3-2 and § 6-3-7; see also Ex parte Thomasville Feed & Seed, supra (holding, in a case where allegedly defective fertilizer destroyed grass on the plaintiffs cattle farm, that venue was not proper in the' county where the plaintiffs cattle farm was located but, instead, was proper only in the county where the fertilizer was sold). Thus, it stands to reason that, in determining whether a county has a strong connection to a case, the fact that a defendant’s allegedly wrongful conduct occurred there carries considerably more weight than the fact that a plaintiffs injury was felt elsewhere. In this case, the acts and omissions giving rise to the plaintiffs’ claims, i.e., EDG’s creation of the allegedly defective designs, KBE’s construction of the dam, Brascho’s supervision and direction of the construction of the dam, and BES’s failure to properly monitor and test the fill material, all occurred in Shelby County. Accordingly, we find .unpersuasive the plaintiffs argument that Shelby County does not have a strong connection to the case simply because the plaintiffs may not have felt the financial impact of the defendants’ acts and omissions in Shelby County.
The plaintiffs also argue that Shelby County does not have a strong connection to the case because, they say, the involvement of Shelby County agencies and departments in responding to the accident was insignificant. Without going into the details of the involvement of each agency and department, it is sufficient to note that the materials before this Court indicate that any involvement on the part of Shelby County agencies and departments was, in fact, minimal. However, even if we ignore completely the involvement of those agencies and departments, there are other substantial facts connecting Shelby County to the case, namely that the designs were created there; that the dam was constructed in Shelby County under Brascho’s supervision and direction and failed there; that the accident allegedly affected third-party property owners in Shelby County; and that the plaintiffs allegedly incurred all of their expenses relevant to the failure of the dam there. Thus, we again find the plaintiffs’ argument unpersuasive, and we conclude that Shelby County has a significant connection to the plaintiffs’ action.
Having established that Shelby County has a strong connection to the plaintiffs’ action, EDG and BES next argue that, in contrast, St. Clair County’s only connection to the case is that Brascho resides there and that KBE, which is no longer in existence, once had its principal place of business there. In support of their argument that the int'erest-of-justice prong of § 6-3-21.1 requires the transfer of the plaintiffs’ action to Shelby County, EDG and BES cite Ex parte Quality Carriers, Inc., 183 So.3d 937 (Ala.2015); Ex parte Morton, supra; Ex parte Navistar, Inc., 17 So.3d 219 (Ala.2009); Ex parte Indiana Mills & Manufacturing, Inc., 10 So.3d 536 (Ala.2008); Ex parte Bama Concrete, 8 So.3d 295 (Ala.2008); and Ex parte McKenzie Oil Co., 13 So.3d 346 (Ala.2008), for the proposition that when a proposed forum has a strong connection to a plaintiffs case, and the original forum has a weak one, the interest-of-justice prong of § 6-3-21.1 requires the transfer of the case to the proposed forum.
*641 The plaintiffs argue that the cited cases, all of which have automobile accidents as their genesis, involved personal injuries, medical treatment, and law-enforcement investigations, facts that, the plaintiffs say, “this Court always takes into consideration when analyzing interest of justice automobile accident cases.” The plaintiffs’ brief, at 20. Thus, the plaintiffs argue, those cases are not analogous to this case in which there were neither personal injuries nor significant involvement by Shelby County agencies and departments.
After reviewing the cases cited by EDG and BES, we note that the plaintiffs have accurately noted that, in all but one of those cases, the fact that there were personal injuries and significant involvement of medical and law-enforcement personnel helped to establish the strong connections of the proposed forums to the respective cases.[4] However, in none of those cases did this Court hold that there is a requirement that there be personal injuries, medical treatment, or law-enforcement involvement to establish a strong connection between a forum and a case. Rather, those were merely the specific facts of those cases that established the strong connections of the proposed forums to the respective cases. Thus, the essential takeaway from those cases is not that they involved personal injuries, medical treatment, and law-enforcement involvement; rather, the crucial holding from each of those cases — and other change-of-venue cases before this Court that did not involve automobile accidents, see, e.g., Ex parte Wachovia Bank, N.A., 77 So.3d 570 (Ala.2011) (conversion), and Ex parte ADT Security Services, Inc., 933 So.2d 343 (Ala.2006) (employment-related claims) — is that when the proposed forum’s connection to the case is strong, and the original forum’s connection is weak, the interest-of-justice prong of § 6-3-21.1 requires transfer of the case to the forum with the stronger connection. Thus, given Shelby County’s strong connection to the plaintiffs’ action, if St. Clair County’s connection to the case is weak, then the cases cited by EDG and BES are applicable, and the interest-of-justice prong would require transfer of the case to Shelby County.
The plaintiffs also argue that the cases cited by EDG and BES are not applicable to this case because, they say, St. Clair County’s ’ connection to the case is also strong. In support of that argument, the plaintiffs contend that a portion of the events giving rise to their claims occurred, at least in part, in St. Clair County.[5] Specifically,, the plaintiffs argue that EDG’s designs were so fláwed that no' reasonably prudent contractor would follow them and that KBE and Brascho’s acceptance of the allegedly flawed designs — which, the plaintiffs contend, occurred in St. Clair County — contributed to the failure of the dam. However, the plaintiffs’ complaint does not allege, nor is there any evidence to indicate, that KBE and Brascho accepted EDG’s designs in St. Clair County. Furthermore, even if the materials did contain évidence or facts supporting that determination, the act giving rise to the plaintiffs’ claims was not the acceptance of the de *642 signs; rather, the act was KBE’s construction of the dam in accordance with those designs and the subsequent failure of the dam. Indeed, the plaintiffs concede as much in their complaint:
“Initially, the defects in the design .,. would be so obvious and apparent to a reasonably prudent contractor, that no reasonably prudent contractor would follow them. Therefore, [KBE] and Bras-cho breached the applicable standard of care by attempting to construct ,.. [the dam] according to plans and specifications so apparently defective that an ordinary contractor of ordinary prudence would know that it was creating a defective and dangerous condition likely to cause a dam failure — ”
(Emphasis added.) The plaintiffs do not allege that the act giving rise to their claims was KBE and Brascho’s acceptance of EDG’s designs; instead, they allege that it was the construction of the dam in accordance with those designs that gave rise to their claims. That act, undisputedly, occurred in Shelby County. Thus, even if KBE and Brascho did accept the designs in St. Clair County, we are not persuaded, given the specific allegations and facts of this case, that the acceptance of the designs there serves to give St. Clair County a strong connection to the case.
The plaintiffs also contend that Bras-cho’s alleged failure to supervise and direct KBE’s employees during construction of the dam occurred, in part, in St. Clair County because, they say, St, Clair County is where Brascho “hire[d], train[ed], re-tainted], supervised], directed] or otherwise employed]” employees of KBE. However, the plaintiffs make no allegation in them complaint that Brascho negligently hired, trained, or retained KBE employees. Rather, the plaintiffs allege in their complaint that Brascho “supervised, directed, and was responsible for all aspects of the work performed by [KBE employees] related to the constmction of the dam.” (Emphasis added.) Thus, because the plaintiffs’ allegations regarding Brascho’s supervision and direction concern Brascho’s conduct in Shelby County, we are unpersuaded by the plaintiffs’ argument that any of Brascho’s conduct relevant to their claims occurred in St. Clair County. See Ex parte Wachovia Bank, 77 So.3d at 575 (noting, in directing the Macon Circuit Court to transfer the case to Lee County, that the residence in Macon County of a defendant accused of negligently supervising bank tellers was irrelevant where the allegedly negligent supervision would have occurred in Lee County).
Each change-of-venue case must be decided on its specific facts. Ex parte J & W, 150 So.3d at 194. In this case, the facts and evidence indicate that Shelby County has a substantial connection to the case that would warrant the transfer of the plaintiffs’ action to that venue. On the other hand, the only relevant facts and evidence concerning St. Clair County’s connection to the case are that Brascho resides there and that KBE once had its principal place of business there. This Court has repeatedly held that one or more defendants’ presence in a plaintiffs chosen forum, without more, constitutes a weak connection to the case. See Ex parte Quality Carriers, Inc., 183 So.3d at 944 (holding that, in a case involving an automobile accident, Dallas County had a “very weak overall connection” to the case where the evidence indicated that one defendant resided there and that maintenance on the automobile in question may have been performed there); Ex parte Morton, 167 So.3d at 302 (noting that Greene County was “connected to th[e] case only by the fact that [one of the defendants] reside[d] there — a connection 'this Court has characterized as ‘weak’ ”); Ex parte Southeast *643 Alabama Timber Harvesting, LLC, 94 So.3d 371, 376 (Ala.2012) (“Chambers County’s sole connection with the case— that it is the principal place of business of [one of the defendants] — is weak in comparison to Lee County’s connection with the case.”); Ex parte Wachovia Bank, 77 So.3d at 575 (noting, in granting a petition for a writ of mandamus directing the transfer of the case, that “no material act or omission occurred in the forum county” and that the forum county’s sole contact with the case was that two of the three defendants resided there); Ex parte Autauga Heating & Cooling, LLC, 58 So.3d 745, 750 (Ala.2010) (noting that, where Montgomery County’s only connection to the case was that one defendant resided there and another conducted business there, there was “no need to burden Montgomery County, with its weak connection to the case, with an action that arose in Elmore County”); and Ex parte Indiana Mills, 10 So.3d at 542 (noting that, where the only connection between Macon County and the case was that one defendant resided there and another defendant did business there, there was “no need for Macon County, with its weak connection with [the] case, to be burdened with an action that arose in Lee County”)..
The plaintiffs correctly cite Ex parte J & W, supra, for the proposition that, when the connection of the proposed forum to the case is not significantly strong, and the connection of the original forum to the case is not markedly weak, the interest of justice does not require the transfer of the case to the proposed forum. However, Ex parte J & W is not analogous to. this case because, as we have thoroughly discussed, Shelby County does have a strong connection to the case, and St. Clair County’s only connection to the case is the presence of one defendant there. Thus, this case is more analogous to those cases, cited in the preceding paragraph, where the proposed forum had a strong connection to the case and the only connection of the original forum to the case was that one or more defendants resided there. Given that St. Clair County’s only connection to this case is that one defendant resides there and another defendant once had its principal place of business there, there is no reason to burden the people and resources of St. Clair County with this case. Ex parte Autauga Heating & Cooling, supra, and Ex parte Indiana Mills, supra. “Accordingly, the interest of justice overrides [the plaintiffs’] choice of forum.” Ex parte Morton, 167 So.3d at 302.
We recognize that the decision to change venue is, to some degree, left to the discretion of the court in the original forum. That discretion, however, is not unbridled.
“We held in [Ex parte First Family Financial Services, Inc., 718 So.2d 658 (Ala.1998),] that the adoption of § 6-3-21.1 ‘substantially modified the law relating to the venue of civil actions.’ 718 So.2d at 660. Formerly, ‘“[t]he ability to transfer cases within Alabama for the convenience of parties and witnesses and in the interest of justice was denied Alabama courts. 718 So.2d at 660 (quoting Robert D. Hunter, Alabama’s 1987 Tort Reform Legislation, 18 Cumb. L.Rev. 281, 289-90 (1988)). We concluded, however, ‘that the Legislature, in adopting § 6-3-21.1, intended to vest in the trial courts, the Court of Civil Appeals, and this Court the power and the duty to transfer a cause when “the interest of justice” requires a transfer.’ 718 So.2d at 660 (emphasis added).
“The plaintiff in First Family argued ‘that a trial judge has almost unlimited discretion in such matters.’ We noted that although the ’trial court ‘has a degree of discretion in determining whether the factors listed in the statute ... are in favor of transferring the action,’ *644 this degree of discretion is not unlimited and ‘must be considered in light of the fact that the Legislature used the word “shall” instead of the word “may” in § 6-3-21.1.’ 718 So.2d at 660 (emphasis added). This statute, we have subsequently noted, is ‘compulsory,’ Ex parte Sawyer, 892 So.2d 898, 905 n. 9 (Ala.2004), and the use of the word ‘shall’ is ‘imperative and mandatory.’ Ex parte Prudential Ins. Co. of America, 721 So.2d 1135, 1138 (Ala.1998) (comparing the use of the word ‘shall’ in Alabama’s interstate forum non conveniens statute, Ala.Code 1975, § 6-5-430, with its use in § 6-3-21.1).”
Ex parte Indiana Mills, 10 So.3d at 541-42.
EDG and BES have carried their burden of showing that Shelby County’s connection to the action is strong. In addition, St. Clair County’s connection to the action is considerably weak. Thus, the trial court exceeded its discretion in refusing to transfer the case to the Shelby Circuit Court, and the interest of justice requires the transfer. We grant EDG’s and BES’s petitions for a writ of mandamus and direct the trial court to transfer the plaintiffs’ action to the Shelby Circuit Court;
1141219 — PETITION GRANTED; WRIT ISSUED.
1141245 — PETITION GRANTED; WRIT ISSUED.
STUART, BOLIN, PARKER, SHAW, MAIN, and WISE, JJ., concur.
MURDOCK, J., concurs in the result.
MOORE, C.J., dissents.

. It is unclear when the dam was completed, but the plaintiffs’ complaint indicates that construction of the dam began in February 2012.

. EDG and BES argued in the trial court that venue was improper in St. Clair County. However, in their petitions to this Court, they have abandoned that argument and have instead focused their argument on the applicability of § 6-3-21.1.

. The convenience of die parties has not been argued as an issue in this mandamus proceeding. The plaintiffs briefly contend in their complaint that they selected St. Clair County as their forum because they claim, given the nature of their allegations, Brascho’s participation in the trial will be crucial. Because Brascho resides in St. Clair County and, the plaintiffs say, is in poor health, it will be more convenient for Brascho if the trial is held in St. Clair County. However, the plaintiffs do not make that argument in their answer filed with this Court. Moreover, even if the convenience of the parties were at issue, the plaintiffs submitted no evidence indicating that Brascho suffers from health issues that would prevent him traveling from St, Clair County to Shelby County.

. Although Ex parte Navistar involved a single-vehicle accident, the plaintiffs action was a products-liability action in which she alleged that the truck the decedent had been driving when he was killed was not " 'crash-worthy.' " 17 So.3d at 220. This Court made no mention of the involvement of any medical or law-enforcement personnel. Regardless, we held that the interest-of-justice prong required transfer of the case to the forum where the product evidenced its alleged defect. 17 So.3d at 222.

. The plaintiffs do not contend that any portion of EDG’s or BES’s work occurred in St. Clair County.