Rel: September 19, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2025

_____

### SC-2025-0152

_____

**Ex parte Penn National Security Insurance Company**

**PETITION FOR WRIT OF MANDAMUS**

**(In re: James Godwin**

**v.**

**Penn National Security Insurance Company et al.)**

**(Dallas Circuit Court: CV-24-900303)**

BRYAN, Justice.

Penn National Security Insurance Company ("Penn National") petitions this Court for a writ of mandamus directing the Dallas Circuit

Court to transfer the underlying action to the Tuscaloosa Circuit Court. Penn National argues that the transfer is required for the convenience of the parties and witnesses and in the interest of justice under § 6-3-21.1, Ala. Code 1975. We deny the petition.

Background

The claims in this action arise from an automobile accident that occurred in rural Tuscaloosa County on January 3, 2024. According to the complaint, James Godwin was employed by Talton Communications, Inc. ("Talton"), and was driving a vehicle owned by Talton in the line and scope of his employment at the time of the accident. The accident occurred when a vehicle driven by Desi Bernard Peoples struck the vehicle driven by Godwin from behind. An Alabama Uniform Traffic Crash Report ("the accident report") was prepared by an officer of the Alabama Law Enforcement Agency. No emergency-medical-services personnel were called to the scene. No evidence suggests that Godwin received any medical treatment in Tuscaloosa County.

Godwin is a resident of Dallas County. Peoples is a resident of Fayette County. Talton's principal place of business is in Dallas County. Talton provided insurance coverage for its employees, including

uninsured-/underinsured-motorist benefits, through a policy with Penn National, a foreign company authorized to do business in Alabama.

On October 23, 2024, Godwin filed a verified complaint against Peoples, Penn National, and Talton in the Dallas Circuit Court ("the trial court"). He sought relief based on claims of negligence and wantonness, the uninsured-/underinsured-motorist provisions of the Penn National policy, and the Alabama Workers' Compensation Act, § 25-5-1 et seq., Ala. Code 1975. Godwin amended his complaint on November 5, 2024, seemingly to clarify that the only claim asserted against Talton was for workers' compensation benefits.

Penn National answered the complaint and filed a separate motion to dismiss, to sever, or to transfer. The motion sought to sever Godwin's workers' compensation claim against Talton from his other claims. The motion also sought to transfer the claims against Penn National and Peoples to the Tuscaloosa Circuit Court based on both the convenience of the parties and witnesses and the interest of justice. Penn National supported its motion to transfer with only Godwin's complaint and the accident report. Peoples joined the motion but provided no argument or evidence of his own.

Godwin opposed Penn National's motion. As to a severance, he stated that he had no objection to bifurcating the workers' compensation claims for trial so that the workers' compensation claim would be tried separately. Godwin, however, did not want the claims severed, asserting that that would require the creation of an entirely new action with the imposition of a new filing fee and increased costs associated with separate discovery related to the same events.

As to a transfer, Godwin argued that Dallas County was more convenient than Tuscaloosa County and that Dallas County had a strong connection to the action. Godwin provided an affidavit from Eric Jackson, the director of the facility where Godwin had received physical therapy for treatment of injuries he alleged he had suffered as a result of the accident. Jackson stated that the physical-therapy facility is in Dallas County. Thus, Jackson and other staff of the facility who provided care to Godwin all worked in Dallas County. Jackson stated that, if they were called as witnesses, it would be highly inconvenient and burdensome for him or his staff to travel to Tuscaloosa County. He stated that it would be more convenient for them to travel to the Dallas County courthouse and that they would spend significantly less time away from

4

work if they had to testify in Dallas County rather than Tuscaloosa County.

Godwin also provided an affidavit from his wife, Stephanie, whom he expected to call as a witness to testify about his injuries and his limitations before and after the accident. She lives and works in Dallas County. Stephanie stated that it would be highly inconvenient for her to travel to Tuscaloosa County and that it would be more convenient for her to travel to the Dallas County courthouse. Thus, she stated, leaving the action in Dallas County would result in her spending less time away from work.

On February 2, 2025, the trial court denied Penn National's motion to sever but ordered that the workers' compensation claim would be tried separately. The trial court also denied Penn National's and Peoples' motions to transfer. On March 7, 2025, Penn National petitioned this Court for a writ of mandamus directing the trial court to grant its motion to transfer the action to the Tuscaloosa Circuit Court. Penn National does not seek relief from the trial court's denial of its motion to sever. Peoples has not joined Penn National's mandamus petition.

<u>Standard of Review</u>

"We have held that '"[t]he proper method for obtaining review of a denial of a motion for a change of venue in a civil action is to petition for the writ of mandamus."'  <u>Ex parte Southeast Alabama Timber Harvesting, LLC</u>, 94 So. 3d 371, 373 (Ala. 2012) (quoting <u>Ex parte National Sec. Ins. Co.</u>, 727 So. 2d 788, 789 (Ala. 1998)).  Nevertheless, the standard for obtaining mandamus review before this Court is a high one:

"'"A writ of mandamus is an extraordinary remedy, and it will be 'issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court.' <u>Ex parte United Serv. Stations, Inc.</u>, 628 So. 2d 501, 503 (Ala. 1993).  A writ of mandamus will issue only in situations where other relief is unavailable or is inadequate, and it cannot be used as a substitute for appeal.  <u>Ex parte Drill Parts & Serv. Co.</u>, 590 So. 2d 252 (Ala. 1991)."'

"<u>Ex parte Wilson</u>, 854 So. 2d 1106, 1108-09 (Ala. 2002) (quoting <u>Ex parte Empire Fire & Marine Ins. Co.</u>, 720 So. 2d 893, 894 (Ala. 1998)).  Moreover, '[w]e apply the abuse-of-discretion standard when considering a mandamus petition challenging a venue ruling, and we will not issue the writ unless the trial court exercised its discretion in an arbitrary and capricious manner.' <u>Ex parte Brookwood Health Servs., Inc.</u>, 781 So. 2d 954, 956-57 (Ala. 2000).  '"Our review is ... limited to those facts that were before the trial court."'  <u>Ex parte Jim Burke Auto., Inc.</u>, 776 So. 2d 118, 120 (Ala. 2000) (quoting <u>Ex parte National Sec. Ins. Co.</u>, 727 So. 2d at 789)."

<u>Ex parte J & W Enters., LLC</u>, 150 So. 3d 190, 193 (Ala. 2014).

Analysis

Penn National bases its petition on § 6-3-21.1. That statute provides, in relevant part:

> "(a) With respect to civil actions filed in an appropriate venue, any court of general jurisdiction shall, for the convenience of parties and witnesses, or in the interest of justice, transfer any civil action or any claim in any civil action to any court of general jurisdiction in which the action might have been properly filed and the case shall proceed as though originally filed therein. …"

The parties do not dispute before this Court that venue would be proper in both Dallas County and Tuscaloosa County. See § 6-3-7, Ala. Code 1975; and Rule 82(c), Ala. R. Civ. P. "When venue is appropriate in more than one county, the plaintiff's choice of venue is generally given great deference." Ex parte Perfection Siding, Inc., 882 So. 2d 307, 312 (Ala. 2003). Thus, the "burden of proof in seeking a transfer under [§ 6-3-21.1] rests squarely on the shoulders of the defendant." Id.

Penn National argues that the trial court should have transferred the action to the Tuscaloosa Circuit Court based on both grounds of § 6-3-21.1: for the convenience of the parties and witnesses and in the interest of justice. As to both grounds, Penn National, citing Ex Parte Indiana Mills & Mfg, Inc., 10 So. 3d 536, 542 (Ala. 2008), argues that the

7

legislature's use of the word "shall" in the statute makes transfer mandatory. .

Certainly, this Court in <u>Indiana Mills</u> noted: "'[T]he Legislature, in adopting § 6-3-21.1, intended to vest in the trial courts, the Court of Civil Appeals, and this Court the power <u>and the duty</u> to transfer a cause when "the interest of justice" requires a transfer.'" <u>Id.</u> at 541 (quoting <u>Ex parte First Family Fin. Servs., Inc.</u>, 718 So. 2d 658, 660 (Ala. 1998)). In <u>First Family</u>, this Court explained: "The trial judge has a degree of discretion in determining whether the factors listed in the statute, i.e., 'the convenience of the parties and witnesses' and 'the interest of justice,' are in favor of transferring the action." 718 So. 2d at 660. Thus, this "Court will reverse the trial court's ruling in this regard only up on a showing of an abuse of discretion." <u>Id.</u> We will consider the application of each ground and the trial court's exercise of discretion in turn.

I. The Convenience of the Parties and Witnesses

As to the convenience of the parties and witnesses, Penn National was required to present evidence showing that Tuscaloosa County was a significantly more convenient forum than Dallas County. This Court has explained the showing required by § 6-3-21.1 as follows:

8

"[T]his Court has recognized that

> "'"[a] defendant seeking a transfer based on § 6-3-21.1 has the <u>burden of proving</u> to the satisfaction of the trial court that the defendant's inconvenience and expense in defending the action in the venue selected by the plaintiff are <u>so great that the plaintiff's right to choose the forum is overcome</u>. <u>Ex parte New England Mut. Life</u>, 663 So. 2d [952,] 956 [(Ala. 1995)]; <u>Ex parte Townsend</u>, 589 So. 2d [711,] 715 [(Ala. 1991)]. For a transfer to be justified, the transferee forum must be 'significantly more convenient' than the forum chosen by the plaintiff. <u>Ex parte Townsend</u>, 589 So. 2d at 715. See also[ ] <u>Ex parte Johnson</u>, 638 So. 2d 772, 774 (Ala. 1994)."'

"<u>Ex parte Blair Logistics, LLC</u>, 157 So. 3d 951, 955 (Ala. Civ. App. 2014) (quoting <u>Ex parte Integon Corp.</u>, 672 So. 2d 497, 500 (Ala. 1995) (emphasis added)). Thus, a trial court should not grant a motion for a change of venue under the convenience-of-the-parties prong unless the new forum is <u>shown</u> to be 'significantly more convenient' than the forum in which the action was filed. See <u>Ex parte First Tennessee Bank Nat'l Ass'n</u>, 994 So. 2d 906, 909 (Ala. 2008).

"In cases in which this Court has found that the 'convenience of the parties and witnesses' warrants a transfer of the action, evidence was provided demonstrating that the proposed transferee forum was 'significantly more convenient' than the transferor forum. Such evidence included affidavits from parties and witnesses stating that the incident underlying the action occurred in the transferee forum, affidavits from the parties stating that they lived in the transferee forum, and evidence indicating that requiring the parties and/or the witnesses to travel to the transferor forum would be a significant burden. See, e.g., <u>Ex parte Kane</u>, 989 So. 2d 509, 511, 512-13 (Ala. 2008) (noting affidavits

9

submitted by the movant in support of the motion for a change of venue in holding that the transferee forum would be a 'substantially more convenient' forum than the transferor forum). In contrast, in cases in which the party moving for the transfer has failed to present <u>evidence</u> demonstrating that the transferee forum is 'significantly more convenient' than the transferor forum, this Court has declined to order a transfer. <u>See</u>, <u>e.g.</u>, <u>Ex parte Gentile Co.</u>, 221 So. 3d 1066, 1069 (Ala. 2016) (noting that the petitioner failed to present any evidence in support of its motion for a change of venue under the doctrine of <u>forum non conveniens</u> in declining to order a transfer of the case)."

<u>Ex parte Tyson Chicken, Inc.</u>, 291 So. 3d 477, 480-81 (Ala. 2019).

Penn National relies almost exclusively on the fact that the accident, and thus Godwin's injury, occurred in Tuscaloosa County and that the accident was investigated there. It also makes a general statement that "litigating this suit in Dallas County would be vexatious and oppressive to not only Penn National, but most importantly, to Peoples." Penn National, however, presented no affidavits or other evidence from its own representatives or witnesses showing that there would be any burden on them in attending proceedings in Dallas County. It likewise presented no affidavit from Peoples stating that he would be burdened by proceedings in Dallas County. "The arguments of counsel are not evidence." <u>Deng v. Scroggins</u>, 169 So. 3d 1015, 1028 (Ala. 2014). <u>See also</u> <u>Ex parte Autauga Heating & Cooling, LLC</u>, 58 So. 3d 745, 749

10

(Ala. 2010) ("'[S]tatements of counsel in motions, briefs, and arguments' … cannot be considered 'evidentiary material' and thus will not be considered by this Court." (citation omitted)).

The only evidence Penn National presented to support its motion to transfer is Godwin's verified complaint and a copy of the accident report. In pertinent part, the complaint merely states the parties' places of residence and principal places of business. It shows that venue is proper in Dallas County but does not show that litigation in Dallas County would be inconvenient for any party or witness. The accident report states the location of the accident and the residences of Godwin and Peoples. It does not state the investigating officer's place of residence or primary workplace. The accident report provides no evidence indicating that it would be inconvenient for the officer to travel to Dallas County. Moreover, it is not certain that he would even be a witness at trial.

In opposition to the motion to transfer, Godwin presented affidavits from two witnesses who explained that they would be inconvenienced by attending proceedings in Tuscaloosa County. The director of the physical-therapy facility in Dallas County where Godwin received treatment stated that it would be inconvenient and burdensome for him

11

or any of his staff to travel to Tuscaloosa County. He explained that travel to the Dallas County courthouse would result in any witness from the physical-therapy facility spending less time away from work than they would if they had to travel to Tuscaloosa County. Godwin's wife likewise explained in her affidavit that she lived and worked in Dallas County and that it would be inconvenient for her to travel to Tuscaloosa County. She stated that she would spend less time away from work if she had to travel to the Dallas County courthouse rather than Tuscaloosa County.

Additionally, Godwin's residence was in Dallas County, as was the principal place of business of his employer and separate defendant, Talton. Talton has neither joined Penn National's motion to transfer nor sought transfer on its own motion. Thus, it seems to have consented to venue in Dallas County. Penn National has not sought relief from the trial court's denial of its motion to sever Godwin's claim against Talton. Thus, another defendant in the case has its principal place of business in Dallas County.

Penn National points to this Court's decision in Ex parte Kane, 989 So. 2d 509 (Ala. 2008), for the proposition that transfer is required when

the only connections to the plaintiff's chosen forum are that it is the plaintiff's place of residence and that an automobile-liability insurer does business there. This Court's decision in <u>Kane</u>, however, does not apply as Penn National suggests. In that case, the movants presented evidence from several witnesses indicating that that they resided in Lee County and would be inconvenienced by litigating in the plaintiff's chosen forum, Clay County. The acts and omissions made the basis of the case all occurred in Lee County. The only connections to Clay County were that the plaintiff resided in Clay County and that the insurance carrier did business there.

In this case, Godwin resides in Dallas County and Penn National does business there. However, regarding the location of witnesses, which was key to this Court's analysis in <u>Kane</u>, the witnesses in this case reside and work in Dallas County and testified that it would be inconvenient for them to travel to Tuscaloosa County. Further, Dallas County has connections to the case beyond those suggested by Penn National. Godwin received medical treatment there for his alleged injuries. Additionally, his claims against Talton relate, at least partially, to his employment, which was based in Dallas County. In fact, the only

13

connection of Tuscaloosa County to the case is that it was the location where the accident occurred.

Penn National argues that the location of Godwin's injury is "dispositive." However, the cases it cites and the analysis it urges us to consider all discuss the location of injury as it relates to the interest-of-justice ground under § 6-3-21.1. See Ex parte Quality Carriers, Inc., 183 So. 3d 937 (Ala. 2015); Ex parte Morton, 167 So. 3d 295 (Ala. 2014); Ex parte Manning, 170 So. 3d 638 (Ala. 2014); Ex parte Indiana Mills, 10 So. 3d 536; Ex parte State Farm Mut. Auto. Ins. Co., 149 So. 3d 1082 (Ala. 2014). We thus will further consider these arguments in their proper context in our consideration of the interest-of-justice ground set out below.

Regarding the convenience of the parties and witnesses, however, Penn National presented no evidence showing that the inconvenience or expense of litigating in Tuscaloosa County would be significantly less burdensome than litigating in Dallas County. It failed to identify any witness who would be inconvenienced by proceedings in Dallas County. It failed to identify any witness or party for whom proceedings in Dallas County would be vexatious or oppressive. It failed to show the location

14

of any evidence in Tuscaloosa County that would not also be readily available in Dallas County. Penn National has not met its burden of showing that Tuscaloosa County is a significantly more convenient forum than Dallas County. See Ex parte Sanders, 314 So. 3d 1226, 1231 (Ala. 2020). "Without more, we cannot say that the trial court abused its discretion in refusing to transfer the action to [Tuscaloosa] County based on" the convenience of the parties and witnesses under § 6-3-21.1. Ex parte Alabama Power Co., 640 So. 2d 921, 925 (Ala. 1994).

II. The Interest of Justice

Penn National argues that the action must be transferred to the Tuscaloosa Circuit Court in the interest of justice, primarily because that is where the accident occurred. This Court has held that the "interest of justice" ground under § 6-3-21.1 requires "the transfer of the action from a county with little, if any, connection to the action, to the county with a strong connection to the action." Ex parte National Sec. Ins. Co., 727 So. 2d 788, 790 (Ala. 1998). The factors to be considered in determining which county has a strong connection to the action and which county has a weak connection include factors related to the convenience of the

15

parties and factors related to the public interest. This Court has explained:

> "Some courts have described the interest of justice in terms interchangeable with the convenience of the parties. In First Family, supra, this Court quoted the United States Supreme Court's decision in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S. Ct. 839, 91 L. Ed. 1055 (1947):
>
>> "'"'Important considerations are the relative ease to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious, and inexpensive.'"'
>
> "First Family, 718 So. 2d at 661 (quoting Ex parte Gauntt, 677 So. 2d 204, 221 (Ala. 1996) (Maddox, J., dissenting), quoting in turn Gilbert, 330 U.S. at 508, 67 S. Ct. 839). First Family also quoted Gilbert (by way of Justice Maddox's dissent in Gauntt) concerning considerations that are less directly related to the convenience of the parties and witnesses:
>
>> "'"'Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local

> interest in having localized controversies decided at home.'"'

"First Family, 718 So. 2d at 661 (quoting Gauntt, 677 So. 2d at 221 (Maddox, J., dissenting), quoting in turn Gilbert, 330 U.S. at 508-09, 67 S. Ct. 839).

> "The key factors concerning the interest of justice that clearly apply in this case are the burden of piling court services and resources upon the people of a county that is not affected by the case and, perhaps most basic of all, the interest of the people of a county to have a case that arises in their county tried close to public view in their county."

Ex parte Smiths Water & Sewer Auth., 982 So. 2d 484, 489-90 (Ala. 2007).

This Court has stated often that consideration of these factors is not a simple balancing test. See Ex parte J & W Enters., 150 So. 3d at 196 (holding that this "analysis has never involved a simple balancing test"). The party seeking transfer must show not only that the requested forum has a strong connection to the action, but also that the current forum has only a weak connection to the action. See, e.g., Ex parte Sanders, 314 So. 3d at 1230; Ex parte KKE, LLC, 295 So. 3d 26, 332-34 (Ala. 2019) (holding that movants did not show that transferor county's connection to case was weak and thus did not demonstrate that the trial court had exceeded its discretion by denying transfer); Ex parte Tyson Chicken, 291 So. 3d

at 482-83 (holding that movant's burden had not been satisfied when both counties had strong connections to the action).  "This inquiry" regarding the strength of the transferee county's connection and the weakness of the transferor county's connection "necessarily depends on the facts of each case."  J & W Enters., 150 So. 3d at 196.

Penn National argues that this Court "has unequivocally held that the location where the cause of action arises and the location where the injury occurs are the dispositive factors to be considered under the interest of justice analysis."  Penn National's petition at 8-9.  This argument misstates our holdings and distorts the proper analysis under § 6-3-21.1.  This Court has never held any one factor to be dispositive of the interest-of-justice analysis.  The cases Penn National cites each consider multiple factors involved in the particular circumstances as part of our normal analysis of the interest-of-justice ground of § 6-3-21.1 described above.  See Ex parte Quality Carriers, 183 So. 3d at 943-44; Ex parte Manning, 170 So. 3d at 644-45; Ex parte Morton, 167 So. 3d at 301-02; Ex parte State Farm, 149 So. 3d at 1087-88;  Ex parte Indiana Mills, 10 So. 3d at 540-42.

This Court has "assign[ed] 'considerable weight'" to the location of the injury, but "it is not, and should not be, the sole consideration for determining venue under the 'interest of justice' prong of § 6-3-21.1." Ex parte J & W Enters., 150 So. 3d at 196-97. See also Ex parte Elliott, 254 So. 3d 882, 886 (Ala. 2017). In J & W Enterprises, an accident between two tractor-trailer rigs occurred on Interstate 10 in Mobile County. The plaintiff sued in the Clarke Circuit Court, and the defendant driver's employer sought a transfer to Mobile County, the location where the accident occurred. The plaintiff alleged claims of negligence and wantonness against the defendant driver. Against the defendant driver's employer, he alleged claims of negligent entrustment and negligent hiring. The plaintiff was a resident of Texas. The defendant driver was a resident of Clarke County. His employer's principal place of business was in Clarke County. There were no witnesses to the action. The plaintiff did not receive any medical treatment in Mobile County. The Mobile police officer who had investigated the accident stated by affidavit that it would not be inconvenient for him to travel to Clarke County to testify. 150 So. 3d at 192.

In light of our prior cases, this Court concluded: "In the present case, the facts before this Court do not indicate that Mobile County has a particularly strong connection to this lawsuit. … In light of the facts before us, Mobile County's nexus to the action is purely fortuitous -- the place on the interstate where the accident occurred." 150 So. 3d at 196. Thus, although the location of the accident was given considerable weight, it was not the sole consideration. This Court held that the defendant driver's employer had not shown that Mobile County had a "particularly strong connection" to the lawsuit.

Additionally, the facts did not show that Clark County's connection to the action was markedly weak. Both defendants were located there, and evidence related to the plaintiffs' claims of negligent entrustment and hiring would be located there. Thus, this Court concluded that the defendant driver's employer had not met its burden. "Given the specific facts of this case, we cannot say that Mobile County has a significantly stronger connection to this case than does Clarke County so that the interest of justice will be offended by trial in Clarke County." 150 So. 3d at 197. Thus, this Court held, the trial court had not exceeded its discretion in refusing to transfer the action.

20

In Ex parte Elliott, the movant insurer requested a transfer from the county where the accident occurred, thus presenting similar, but differing, specific facts and burdens than those in J & W Enterprises. In Elliott, an automobile accident occurred in Lowndes County and was investigated by City of Hayneville police in Lowndes County. The plaintiff was a resident of Montgomery County and sought treatment for her injuries there. She sued her automobile insurer in Lowndes County, seeking uninsured-motorist benefits under her policy, which was issued in Montgomery County. The insurer was a foreign corporation. On the insurer's motion, the trial court transferred the case to Montgomery County. 254 So. 3d at 883-84.

On those specific facts, this Court determined that both counties had strong connections to the case. Thus, the movant insurer had not met its burden of showing that the transferor county had only a weak connection and that the transferee county had a significantly stronger connection to the action. Thus, this Court held, the trial court had exceeded its discretion in transferring the action. 254 So. 3d at 887.

In considering J & W Enterprises, on which the movant insurer had relied, this Court in Elliott explained:

21

"This Court's decision in J & W Enterprises should not be read as undermining location-of-injury as the foremost factor in the interest-of-justice analysis. To the contrary, J & W Enterprises reaffirmed our assignment of '"considerable weight" to the location where the accident occurred.' 150 So. 3d at 196. Instead, we merely recognized in J & W Enterprises that the location of the accident is not the sole factor to be considered in the interest-of-justice analysis and that there will be circumstances, as was the case in J & W Enterprises, where the interest of justice will not compel the case to be heard in the venue where the accident occurred."

254 So. 3d at 887.

Penn National argues that, by this statement in Elliott, "any relevancy Ex parte J & W Enterprises might have had to this case was extinguished … when this Court, in revisiting its decision in [J & W Enterprises,] returned the focus of the interest-of-justice factor … to the location where the accident occurred." Penn National's reply brief at 8. By this argument, Penn National once again misstates our holdings and distorts the proper analysis under § 6-3-21.1. In Elliott, this Court by no means overruled, departed from, or changed the interest-of-justice analysis, as stated in J & W Enterprises. Consistent with one another, both opinions focus the analysis on the specific facts presented in each case considered in light of the movants' burdens. The location of the injury is to be given considerable weight, but in some circumstances it

22

may present a strong connection to the action and in some circumstances it may not. It is the movant's burden to show with appropriate evidence that the relative strength and weakness of the transferee and transferor counties is sufficient to override the plaintiff's choice of forum given the specific circumstances of each case.

The only evidence Penn National has presented to satisfy its burden is a copy of the accident report. This evidence alone is insufficient to prove both that Tuscaloosa County has a strong connection to the matters giving rise to the action and that Dallas County has a weak connection to the matters giving rise to the action. Penn National points to the "considerable weight" given to the location of the injury and notes that the accident, injuries, and investigation all occurred in Tuscaloosa County. It cites Ex parte Southeast Alabama Timber Harvesting, LLC, 94 So. 3d 371 (Ala. 2012), and Ex parte Wachovia Bank, N.A., 77 So. 3d 570 (Ala. 2011). In each of those cases, the location of the injury was not automatically determined to have a strong connection to the case. The inquiry was whether anything material to the case happened in each county. Southeast Alabama Timber, 94 So. 3d at 376; Wachovia Bank, 77 So. 3d at 573-74. See also Ex parte Reed, 295 So. 3d 38, 43 (Ala. 2019)

(holding that "nothing material to the action transpired in" transferor county).

In response to an argument similar to Penn National's, this Court recently explained that our cases consider facts in addition to the location of the accident or injury to justify a transfer. See Ex parte Burgess, 298 So. 3d 1080, 1083-84 (Ala. 2020) (considering Ex parte Tier 1 Trucking, LLC, 222 So. 3d 1107 (Ala. 2016); Ex parte Southeast Alabama Timber, supra; Ex parte Autauga Heating & Cooling, supra, 58 So. 3d 745 (Ala. 2010); Ex parte Indiana Mills, supra). See also Ex parte State Farm, 149 So. 3d at 1087-88. Because the movant in Burgess had failed to provide any evidence beyond the accident report, this Court held, it had failed to show that the transferor county had a weak connection to the case. 298 So. 3d at 1083-84.

Here, the accident report shows only that the accident occurred in Tuscaloosa County. Certainly, the citizens of that county have an interest in seeing that motorists on their roads act responsibly. Even if we accept that that is enough to show a strong connection to the case, Penn National has not met its burden of showing that Dallas County has only a weak connection to the matters giving rise to the action. Certainly,

events material to Godwin's claims occurred in Dallas County. All of his medical treatment occurred there, most of the witnesses reside there and will testify about events that occurred there, his employment on which his workers' compensation claim rests is based there, and Penn National's policy was issued there. Under these circumstances, we cannot say that nothing material to the action occurred in Dallas County or that Dallas County has only a weak connection with the case.

Penn National argues that our cases have held that the plaintiff's place of residence, employment, medical treatment, and insurance are not enough to outweigh the location of the injury. It references Ex parte Sanders, supra; Ex parte Manning, supra; and Ex parte Kane, supra; and it relies most heavily on Ex parte Elliott, supra. However, there was more to each of those cases than the type of balancing Penn National suggests. See Sanders, 314 So. 3d at 1230-31 (holding that transferee county, the place of residence of one defendant and one eyewitness, without more, had insufficiently strong connection to override plaintiff's choice of forum in county where accident occurred and closer to where medical treatment was received); Manning, 170 So. 3d at 644-45 (holding that the county where accident occurred was also location of

hospitalization and place of residence of another party and that only connection to other county was that one party resided there); Kane, 989 So. 2d at 512-13 (noting that, in addition to being location of accident, all witnesses but plaintiff resided in transferor county and providing no discussion of where medical treatment occurred).

We do find Elliott persuasive. There, both counties had strong connections to the action. "The accident, injuries, and police investigation occurred in Lowndes County. On the other hand, Elliott resides in Montgomery County, where she sought treatment for her injuries resulting from the accident and where the parties' contractual dealings arose." 254 So. 3d at 887. Because the defendant did not show that the transferor county had only a weak connection to the action, this Court held that the trial court had erred in ordering a transfer. Id.

Similarly, here, Godwin resides in Dallas County, where he sought treatment for his injuries and where the policy giving rise to his claim against Penn National arose. Penn National therefore has not met its burden of showing that Dallas County has only a weak connection to the action. Therefore, it has not shown that the trial court exceeded its discretion in denying its motion to transfer. Because Penn National has

26

no clear legal right to an order transferring the action to Tuscaloosa County and has failed to show any duty on the part of the trial court to grant its motion to transfer, it is not entitled to a writ of mandamus. Therefore, we deny its petition.

PETITION DENIED.

Stewart, C.J., and Shaw, Wise, Mendheim, Cook, McCool, and Lewis, JJ., concur.

Sellers, J., concurs in the result.